## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

KENNETH R. MCCLELLAND,
      Appellant,

v.

DEPARTMENT OF VETERANS
    AFFAIRS,
      Agency.

DOCKET NUMBER
AT-0752-23-0162-I-1

DATE:  December 10, 2025

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Kenneth R. McClelland</u>, Thomson, Georgia, pro se.

<u>Joy Warner</u> and <u>Glynneisha Bellamy</u>, Decatur, Georgia, for the agency.

### BEFORE

Henry J. Kerner, Vice Chairman
James J. Woodruff II, Member

### FINAL ORDER

The appellant has filed a petition for review of the initial decision, which dismissed his involuntary retirement appeal for lack of jurisdiction.  For the reasons discussed below, we GRANT the appellant's petition for review, REVERSE the initial decision, FIND that the agency engaged in disability

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

discrimination, and ORDER the agency to reinstate the appellant to his former position.

## BACKGROUND

The appellant was employed by the Veterans Health Administration as a WG-10 Air Conditioning Equipment Operator. Initial Appeal File (IAF), Tab 7 at 20. On January 4, 2022, the appellant tested positive for COVID-19 and, as a result, began taking sick leave on January 6, 2022. IAF, Tab 7 at 22, Tab 19 at 95. On February 1 and 2, 2022, the appellant informed his supervisor that his sick leave balance was low and he inquired as to the protocol for using his accrued annual leave to cover his continued illness-related absences. IAF, Tab 7 at 51-52. Thereafter, on February 5, 2022, the appellant exhausted his sick leave balance.[2] IAF, Tab 7 at 23, Tab 23 at 4.

On February 6, 2022, the appellant informed his supervisor that he remained unable to work due to complications associated with COVID pneumonia. IAF, Tab 7 at 54. On this same date, the appellant's supervisor acknowledged the appellant's question regarding annual leave, and he informed the appellant that, for him "to honor [the] request appropriately," the appellant was required to provide him with medical documentation "covering [his] absence since [January] 19, 2022."[3] Id. at 55-56. The appellant did not want to provide his medical information directly to his supervisor; as a result, he contacted Dr. P., a Medical Director at the agency facility where he worked. IAF, Tab 7 at 68, Tab 19 at 24, 26, Tab 26-1, Hearing Recording (HR 26-1) (testimony of the appellant). The appellant provided Dr. P. with a medical note from his pulmonologist, and, on February 14 and 17, 2022, Dr. P. relayed the general

[2] After this date, the appellant's work status was recorded as either "LWOP," leave without pay, or "AWOL," absent without leave. IAF, Tab 7 at 23-26.

[3] Thereafter, the appellant continued to seek permission from his supervisor to use his accrued annual leave, which totaled approximately 6 weeks; however, as discussed herein, his request was never approved. *E.g.*, IAF, Tab 7 at 28-30, 55, 61-65.

substance of the medical note to the appellant's supervisor and informed the supervisor that the appellant was medically unable to work. IAF, Tab 19 at 24-26, 91. Dr. P. also informed the appellant's supervisor that the appellant's "return date [was] not certain"; however, he was scheduled to be reevaluated by his pulmonologist on March 1, 2022. *Id.* at 25-26. On February 16, 2022, the appellant informed his supervisor that he had provided Dr. P. with medical documentation, and, on February 18, 2022, he again requested use of his annual leave. IAF, Tab 7 at 68. The appellant's supervisor responded by stating that he had "not yet received [the appellant's] Doctor/work note/excuse for January 19, 2022 to present." *Id.* at 69 (punctuation in original).

On March 2, 2022, the appellant submitted initial Family and Medical Leave Act (FMLA) paperwork to agency human resources personnel. IAF, Tab 7 at 15, Tab 23 at 5; HR 26-1 (testimony of the appellant). Thereafter, he retired from his position on March 31, 2022. IAF, Tab 7 at 20. The Standard Form 50 reflecting his retirement states as follows: "REASON FOR RETIREMENT: TO OBTAIN RETIREMENT BENEFITS." *Id.* (punctuation in original). At the time of his retirement, the appellant was in an unpaid status, his request to use annual leave had not been approved, and his FMLA request had not been approved.[4] *Id.* at 25; HR 26-1 (testimony of the appellant). Following his retirement, the appellant received payment for 256 hours of accrued annual leave. IAF, Tab 23 at 5.

On June 1, 2022, the appellant filed a formal equal employment opportunity (EEO) complaint alleging that the agency had subjected him to a hostile work environment based on race, age, disability, and reprisal for EEO activity by, among other things, denying him reasonable accommodation, denying him use of his annual leave, and constructively removing him from his position. IAF, Tab 10 at 15-16. The agency determined that the appellant's allegations

---

[4] In its prehearing statement, the agency indicated that, at the time, there was a 6-week backlog in processing FMLA requests. IAF, Tab 20 at 5.

regarding his constructive removal constituted a mixed claim and informed him that the agency's Office of Employment Discrimination Complaint Adjudication (OEDCA) would issue a final agency decision (FAD) regarding the claim, which he could then appeal to the Board.[5] *Id.* at 18, 21. It also informed him that, if did not receive a FAD within 120 days of the date on which he filed his formal EEO complaint, i.e., June 1, 2022, he could appeal his mixed claim to the Board. *Id.* at 21.

On January 15, 2023, the appellant, who had not yet received a FAD regarding his mixed claim, filed the instant Board appeal alleging that the agency had constructively discharged him by creating an intolerable work environment that had compelled him to retire. IAF, Tab 1, Tab 11 at 3 n.2, Tab 24 at 1. The appellant also alleged that the agency had engaged in disability discrimination by failing to accommodate him. IAF, Tab 1, Tab 24 at 1. Thereafter, on February 14, 2023, OEDCA informed the appellant that, because he had appealed his mixed claim to the Board, it would hold that claim in abeyance pending the resolution of his Board appeal. IAF, Tab 10 at 25-26.

On July 20, 2023, following a hearing on the matter, the administrative judge issued an initial decision dismissing the appeal for lack of jurisdiction. IAF, Tab 28, Initial Decision (ID) at 1, 9. The administrative judge found, among other things, that the appellant's illness, and not the agency's actions, had imposed the terms of his retirement. ID at 8. The administrative judge also found that, because the appellant had failed to establish Board jurisdiction over the matter, he was precluded from considering the appellant's disability discrimination claim.[6] ID at 9.

---

[5] A mixed case arises when an appellant has been subject to an action that is appealable to the Board and alleges that the action was effected, in whole or in part, because of discrimination. *Miranne v. Department of the Navy*, 121 M.S.P.R. 235, ¶ 8 (2014).

[6] Following the issuance of the initial decision, on August 2, 2023, an Equal Employment Opportunity Commission administrative judge issued a decision finding that the agency had denied the appellant reasonable accommodation and discriminated

The appellant has filed a petition for review, and the agency has filed a response. Petition for Review (PFR) File, Tabs 1, 6.

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>The appellant established both that his retirement was involuntary and that the agency engaged in disability discrimination.</u>

An employee-initiated action, such as retirement, is presumed to be voluntary and generally is not an appealable adverse action. *See Shoaf v. Department of Agriculture*, 260 F.3d 1336, 1340-41 (Fed. Cir. 2001). However, the Board has jurisdiction over an employee-initiated action as a "constructive" adverse action under 5 U.S.C. chapter 75 if the appellant establishes the following: (1) he lacked a meaningful choice in the matter and (2) it was the agency's improper actions that deprived him of a meaningful choice. *See Bean v. U.S. Postal Service*, 120 M.S.P.R. 397, ¶ 11 (2013) (setting forth a two-part standard for constructive adverse action appeals). For the reasons discussed herein, we find that the appellant satisfied these criteria and we reverse the initial decision.

*The appellant lacked a meaningful choice.*

Here, the appellant showed that he lacked meaningful choice regarding his retirement. To this end, the appellant provided evidence showing that he was medically unable to work. *E.g.*, IAF, Tab 7 at 25, Tab 19 at 25-26, 91. The first part of the two-part jurisdictional standard is met when an appellant has no option but to work outside of medical restrictions. *See Bean*, 120 M.S.P.R. 397, ¶ 13 (rejecting the notion that "working outside medical restrictions is somehow a viable option for [F]ederal employees"); *see also Moore v. U.S. Postal Service*,

---

against him by denying him use of his accrued annual leave. Petition for Review File, Tab 8 at 4-34. The administrative judge ordered the agency to, among other things, pay the appellant $50,000 in compensatory damages. *Id.* at 29. On August 4, 2023, OEDCA informed the appellant that it accepted these findings, and it issued a Final Order to this effect. *Id.* at 36.

117 M.S.P.R. 84, ¶ 12 (2011) (finding that the appellant made a sufficient allegation of involuntariness when she provided evidence indicating that she was medically unable to work at her assigned duty station). Thus, we find that the appellant lacked meaningful choice regarding his retirement.

> *It was the agency's improper actions that deprived the appellant of a meaningful choice.*

The appellant also showed that it was the agency's improper actions that deprived him of a meaningful choice regarding his retirement. To this end, we find that the agency violated the Rehabilitation Act and engaged in disability discrimination by failing to provide the appellant with reasonable accommodation.[7]

To establish disability discrimination based on a failure to accommodate claim, an employee must show that: (1) he is an individual with a disability, as defined by 29 C.F.R. § 1630.2(g); (2) he is a qualified individual with a disability, as defined by 29 C.F.R. § 1630.2(m); and (3) the agency failed to provide reasonable accommodation. *Miller v. Department of the Army*, 121 M.S.P.R. 189, ¶ 13 (2015). An agency is required to make reasonable accommodation to the known physical and mental limitations of an otherwise qualified individual with a disability unless the agency can show that accommodation would cause an undue hardship on its business operations. *Id.*; 29 C.F.R. § 1630.9(a). A request for reasonable accommodation is the first step in the informal, interactive process between the employee and the agency. EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act (EEOC Enforcement Guidance), (Oct. 17, 2002), https://www.eeoc.gov/laws/guidance/enforcement-guidance-reasonable-accommodation-and-undue-hardship-under-ada (last visited Dec. 10, 2025).

---

[7] Because we so find, we need not address the appellant's remaining arguments regarding improper agency actions. PFR File, Tab 1.

Here, we find that the appellant was a qualified individual with a disability who requested accommodation; however, the agency failed to engage in the interactive process or provide accommodation. *E.g.*, IAF, Tab 7 at 51-72, 76-77, Tab 19 at 26, 91; *see* 29 C.F.R. § 1630.2(g), (m). The record evidence shows that, in February 2022, the appellant had developed severe COVID-19 pneumonia that required oxygen supplementation; this condition precluded him from working. *E.g.*, IAF, Tab 19 at 26, 91; *see* https://www.hhs.gov/civil-rights/for-providers/civil-rights-covid19/guidance-long-covid-disability/index.html (explaining that long COVID can be a disability under the Americans with Disabilities Act and the Rehabilitation Act if the physical symptoms thereof substantially limit one or more major life activities) (last visited Dec. 10, 2025). The appellant repeatedly informed his supervisor of his illness and his medical inability to work and, on several occasions, requested use of his accrued annual leave to cover his absences;[8] however, his supervisor denied these requests and failed to engage in the interactive process.[9] *E.g.*, IAF, Tab 7 at 16, 51-52, 54-55; *see Kirkland v. Department of Homeland Security*, 119 M.S.P.R. 74, ¶ 18 (2013) (explaining that, once an employee informs the agency that he requires accommodation, the agency must engage in an interactive process to determine appropriate accommodation); *see also Paris v. Department of the Treasury*, 104 M.S.P.R. 331, ¶ 17 (2006) (finding that an employee need only let an employer know in general terms that an accommodation for a medical condition is needed).

---

[8] On February 14, 2022, Dr. P. also informed the appellant's supervisor of the appellant's illness and his medical limitations; Dr. P. further informed the appellant's supervisor that the appellant may be entitled to reasonable accommodation. IAF, Tab 19 at 26 (February 14, 2022 email from Dr. P. to the appellant's supervisor).

[9] Instead, the appellant's supervisor improperly instructed the appellant, on several occasions, to provide his medical documentation directly to his supervisor. IAF, Tab 7 at 55-56, 65, 68-69, Tab 19 at 9-10 (indicating that an employee may support a request for leave with a medical certification from certain agency health care providers), Tab 25 at 17 (agency policy stating that supervisors should "[r]efrain from reviewing the medical documentation").

Failure to engage in the interactive process alone, however, does not violate the Rehabilitation Act; rather, the appellant must show that this omission resulted in a failure to provide reasonable accommodation. *Sanchez v. Department of Energy*, 117 M.S.P.R. 155, ¶ 18 (2011). In other words, the appellant must establish that reasonable accommodation existed. *See Paris*, 104 M.S.P.R. 331, ¶ 24. Here, we find that the appellant made such a showing; as stated, he repeatedly identified the use of his accrued annual leave as viable accommodation. *E.g.*, IAF, Tab 7 at 51-52, 61, 65, 68; *see* EEOC Enforcement Guidance ("Permitting the use of accrued paid leave, or unpaid leave, is a form of reasonable accommodation when necessitated by an employee's disability.").[10] Moreover, the agency failed to show that allowing the appellant to utilize his accrued leave would have constituted an undue burden on its business operations. Thus, we find that the agency violated the Rehabilitation Act by failing to provide the appellant with reasonable accommodation; this improper act deprived the appellant of a meaningful choice regarding his retirement. *See Bean*, 120 M.S.P.R. 397, ¶ 11; *see also Carey v. Department of Health and Human Services*, 112 M.S.P.R. 106, ¶ 7 (2009) (indicating that an agency's improper denial of a request for reasonable accommodation may substantiate an involuntary retirement claim).

---

[10] In the initial decision, the administrative judge reasoned that the appellant failed to show that his retirement was involuntary in part because, even if the agency had allowed him to use his roughly 6 weeks of accrued annual leave in February 2022, "[the appellant] would have been back in the same incomeless position [6] weeks later." ID at 6. We disagree with this rationale. The fact that the appellant's illness would ultimately turn out to be prolonged does not excuse the agency's failure to engage in the interactive process or accommodate the appellant. Indeed, the record evidence shows that, up to the point of his retirement, it was anticipated that the appellant would recover from his illness and be able to return to work. *E.g.*, IAF, Tab 18 at 125, Tab 19 at 91. Moreover, had the agency engaged in the interactive process with the appellant, additional options, such as advanced sick leave or the agency's voluntary leave transfer program, could have been considered. *E.g.*, IAF, Tab 19 at 15-16, Tab 21 at 22-23. Instead, the appellant's supervisor continued to deny the appellant's requests to utilize his accrued annual leave, even throughout March 2022, while the appellant's FMLA request was pending. *E.g.*, IAF, Tab 7 at 41-43, Tab 19 at 5, 9, 17-18.

**ORDER**

We ORDER the agency to cancel the appellant's retirement and restore him retroactive to March 31, 2022. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision

are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

## NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

## NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST COMPENSATORY DAMAGES

You may be entitled to be paid by the agency for your compensatory damages, including pecuniary losses, future pecuniary losses, and nonpecuniary losses, such as emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life. To be paid, you must meet the requirements set out at 42 U.S.C. § 1981a. The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.204. If you believe you meet these requirements, you must file a motion for compensatory damages WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion with the office that issued the initial decision on your appeal.

## NOTICE OF APPEAL RIGHTS[11]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

---

[11] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any

requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's

disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[12]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

[12] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

*Gina K. Grippando*

FOR THE BOARD:                    _____
                                  Gina K. Grippando
                                  Clerk of the Board

Washington, D.C.

**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805.  Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete.  Missing documentation may substantially delay the processing of a back pay award.  **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE:  Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐   1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket.  Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐   2) Settlement agreement, administrative determination, arbitrator award, or order.

☐   3) Signed and completed "Employee Statement Relative to Back Pay".

☐   4) All required SF50s (new, corrected, or canceled).  **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐   5) Certified timecards/corrected timecards.  **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐   6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐   7) Outside earnings documentation.  Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment.  Documentation includes W-2 or 1099 statements, payroll documents/records, etc.  Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:**  When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received.  The payroll office must collect the debt from the back pay award.  The annual leave will be restored to the employee.  Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).

**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.
2. The following information must be included on AD-343 for Restoration:

    a. Employee name and social security number.
    b. Detailed explanation of request.
    c. Valid agency accounting.
    d. Authorized signature (Table 63).
    e. If interest is to be included.
    f. Check mailing address.
    g. Indicate if case is prior to conversion.  Computations must be attached.
    h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a. Must provide same data as in 2, a-g above.
    b. Prior to conversion computation must be provided.
    c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.